IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY LITTLE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1268 |
| | ) | |
| THE BOROUGH OF GREENVILLE, et al., | ) | |
|     Defendants. | ) | Magistrate Judge Mitchell |
| | ) | |

<u>MEMORANDUM AND ORDER</u>

Presently before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the Defendants. For the reasons that follow, the motion will be granted with respect to Counts II, III, IV, V, VI and VII of the Complaint and denied with respect to Count I.

Plaintiff, Nancy Little, brings this action alleging civil rights claims pursuant to 42 U.S.C. § 1983 and related state law claims arising out of her termination from employment as the Greenville Borough Secretary on September 12, 2012. She names as defendants the Borough of Greenville, Pennsylvania, the Borough Manager (Jasson Urey) and seven members of the Borough Council (Brian W. Whipley, Pamela S. Auchter, Donald B. Shaw, Anthony D'Alfonso, Alfred Peden, Theodore Jones and Megan Heathcote).

<u>Facts</u>

Plaintiff indicates that she began her employment with the Borough in June 2009 in the position of Borough/Code Secretary and performed those duties at all relevant times thereafter. (Compl. ¶ 6.)[1] At the regularly scheduled meeting on September 11, 2012, Borough Council appointed Megan Heathcote to fill a vacancy on Borough Council, allegedly without public

---

[1] ECF No. 1.

discussion or participation in violation of 65 Pa. C.S. § 710.1, Pennsylvania's Sunshine Act. (Compl. ¶ 7.) Heathcote then participated in the meeting and voted on all remaining agenda items and participated in an executive session which was held at the end of the meeting and then voted with all other Council members to terminate Plaintiff's employment. (Compl. ¶ 8.)

On September 12, 2012, a prepared statement was read to Plaintiff by Borough Manager Urey with Borough Solicitor James Douglas present, informing her of Council's decision to terminate her employment and citing "breach of confidentiality" but no further explanation was offered, no written copy of the accusations or termination was provided to her and she was given only 15 minutes to vacate the building. (Compl. ¶ 9.) Plaintiff asserts that she never engaged in any act in her capacity as a municipal employee wherein she breached confidentiality and that her only communications with third parties, in her employment capacity, involved matters of public concern relative to information needed or of appropriate concern to the community, which constituted constitutionally protected free speech. (Compl. ¶¶ 10-11.)

She further states that:

It is the duly adopted policy of the Borough of Greenville that all employees who are subject to discipline and/or termination have the right to appeal, that they are to be informed of that right, and that an Acknowledgment of same is to be obtained and appended to the employee's personnel file.

(Compl. ¶ 12 & Ex. 1.)[2] She contends that, by adopting this appellate right procedure, the Borough thereby altered her relationship from at-will employment to create an expectation of continuing employment subject to a progressive disciplinary scheme which necessitates the establishment of a just cause determination before an employee can be disciplined and/or terminated. (Compl. ¶ 13.) She further contends that this procedure "vested [her] with a

---

[2] Plaintiff appears to be quoting from the Personnel Code of the Borough of Greenville § 835, Part 8 of Chapter 1 (Administration and Government) of the Code of Ordinances of the Borough of Greenville, located at http://www.greenvilleborough.com/codebook.asp

property interest in her public employment by way of an implied contract of employment created by the facts as averred herein." (Compl. ¶ 14.) She states that she was never given a pre-disciplinary notice, process or procedure, was denied any type of hearing pre or post her termination, was never informed of her appeal rights and was denied an opportunity for a necessary and proper notice, hearing and record before the local agency in violation of 2 Pa. C.S. § 551, the "Local Agency Law." (Compl. ¶¶ 16-19.)

Plaintiff alleges that on October 9, 2012, Ms. Heathcote resigned as a Council member, followed by Council voting to hire her to replace Plaintiff as Borough/Code Secretary. Ms. Heathcote was quoted publicly as saying that if she had known that the position was becoming available she would not have applied to be on Council. Finally, she alleges that when the vacant position was posted, it was advertised in a local newspaper for one (1) day instead of the customary three (3) days. (Compl. ¶¶ 20-22.)

Procedural History

Plaintiff filed this complaint on August 30, 2013. Federal question jurisdiction is asserted over the civil rights claims, 28 U.S.C. § 1331, and supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367(a). Count I alleges that Defendants violated Plaintiff's right to freedom of expression in violation of the First Amendment. Count II alleges that they denied her due process rights based upon her property interest in her employment. Count III alleges that her discharge constituted a breach of her employment contract. Count IV alleges that she was subjected to a wrongful termination. Count V alleges a claim of detrimental reliance. Count VI alleges that Defendants violated Local Agency Law by denying her reasonable notice and opportunity to be heard in that no hearing nor record thereto was empaneled or conducted. Count VII alleges a violation of the Pennsylvania Ethics Act, 65 Pa.

C.S. § 1103(a).

On November 19, 2013, Defendants filed a motion to dismiss (ECF No. 2). Plaintiff filed her brief in opposition on December 11, 2013 (ECF No. 7).

<u>Standard of Review</u>

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. <u>Id.</u> at 679. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Defendants argue that: 1) the Borough has governmental immunity with respect to the

state law claims in Counts III, IV and V because they allege intentional torts; 2) Plaintiff has not stated § 1983 claims in Counts I and II because she has not identified a speech act or a property interest in her employment, which was at-will, and she has not identified a public policy pursuant to which the Borough may be held liable; 3) because Pennsylvania has at-will employment, her claims for breach of employment contract (Count III), wrongful termination (Count IV) and detrimental reliance (Count V) must be dismissed; 4) the claims as asserted against the Borough Manager and Council members are redundant of the claims against the Borough because they arise out of acts taken by these individuals in their official capacities (voting to terminate her employment, reading a statement to that effect); 5) the individuals are entitled to qualified immunity because they did not violate her rights; 6) under Pennsylvania law, the individuals are entitled to immunity except for willful misconduct, so Counts VI and VII should be dismissed; 7) Plaintiff has not stated a claim under Local Agency Law; and 8) the alleged claim for violation of the Ethics Act (Count VII) is to be presented to an "independent commission," 65 Pa. C.S. § 1101.1.

Plaintiff responds that: 1) governmental immunity does not bar liability for constitutional violations and local immunity applies to torts, not claims of breach of contract; 2) she has stated claims for freedom of expression and for denial of a property interest; 3) her employment was not at-will but was modified by the disciplinary appeal policy adopted by Borough; 4-6) the Borough Manager and Council members may be held personally liable for their actions, so these claims are not redundant or barred by immunity doctrines; 7) the Borough's disciplinary appeal policy removed her employment from at-will status with respect to Local Agency Law as well; and 8) the Court can exercise supplemental jurisdiction over the Ethics Act claim. The Court need not reach all of these arguments.

<u>Section 1983 Claims</u>

In Counts I and II, Plaintiff invokes the civil rights statute to state two claims. It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994). <u>See also</u> <u>Baker</u>, 443 U.S. at 140; <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).

However, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 70 (1992).

<u>First Amendment</u>

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. 1. "First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States." <u>NAACP v. Claiborne Hardware Co.</u>, 458 U.S. 886, 907 n.43 (1982). Plaintiff alleges that Defendants retaliated against her for exercising her First Amendment right of free speech. Therefore, the First Amendment is implicated in this

case.

Defendants argue that Plaintiff has failed "to plead any facts to establish what, if any, protected speech acts were violated." (ECF No. 3 at 4.) However, she has alleged that all she was told at her abrupt termination was that she "breached confidentiality." Plaintiff cannot be faulted for failing to provide more details regarding her termination when this is the only information she was given. This minimal piece of information does suggest that her termination resulted from information she communicated, which could fall within the scope of the First Amendment. "The <u>Twombly</u> plausibility standard, which applies to all civil actions, <u>see</u> <u>Iqbal</u>, 129 S.Ct. at 1953, does not prevent a plaintiff from 'pleading facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant…." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010).

Defendants argue that the Borough cannot be liable because Plaintiff has not identified a "policy" pursuant to which her employment was terminated. The Supreme Court has held that:

> [A] local government may not be sued under § 1983 for any injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983.

<u>Monell v. Department of Social Servs. of City of N.Y.</u>, 436 U.S. 658694 (1978). More recently, the Court has held that "proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." <u>Board of County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 405 (1997). Defendants have not explained why the Borough itself is not responsible for actions taken by its duly elected Council and duly appointed Borough Manager. They have not argued

that the Council is not a policy making body or that the Manager is not a policy making official and Pennsylvania law would indicate that they are.  See 53 P.S. § 46202 ("The powers of the borough shall be vested in the borough council"); 53 P.S. § 46142 ("The council, by ordinance, may delegate … any of the nonlegislative and nonjudicial powers and duties of the council, to the borough manager.").  Their acts "may fairly be said to represent official policy" and therefore liability may be based upon such acts when they violate plaintiffs' rights.

Defendants also seek to dismiss Count I as to the individual defendants on the grounds that they are redundant of the claim against the Borough and based on the doctrine of qualified immunity.  Plaintiff responds that the claim are against these defendants in their individual capacities and that they are not entitled to qualified immunity.

Claims against government officials in their official capacities are redundant of claims against the municipality itself.  Melo v. Hafer, 502 U.S. 21, 25-26 (1991).  Thus, any claims against the Borough Manager or Council members in their official capacities would be redundant of the claims against the Borough.  However, in this case, Plaintiff alleges claims against the Council members and the Borough Manager in their individual capacities.  The Supreme Court has held that, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  Id. at 25 (citation omitted).  In determining whether a defendant is sued in his personal or official capacity, courts first look to the allegations of the complaint.  Melo v. Hafer, 912 F.2d 628, 636 n.7 (3d Cir. 1990). Plaintiff's allegations of a First Amendment violation are as sufficient as they can be at this stage of the proceedings, for the reasons stated above.

The individual defendants argue that they are entitled to qualified immunity because they

did not violate clearly established law.  Plaintiff responds that the issue of qualified immunity

cannot be decided at this stage of the proceedings.

As summarized by the Court of Appeals for the Third Circuit:

> The formula for analyzing a qualified immunity claim is a several stage process.
> First, the court is to decide whether a constitutional violation has occurred, and
> then it must "proceed to determine whether that right was clearly established at
> the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct.
> 1692, 143 L.Ed.2d 818 (1999).  A defendant "may ... be shielded from liability for
> civil damages if [his] actions did not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known." Hope v.
> Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

Carswell v. Borough of Homestead, 381 F.3d 235, 241-42 (3d Cir. 2004) (internal citations

omitted).  Qualified immunity is an objective decision to be decided by the court as a matter of

law.  Id. at 242.  Moreover, the Supreme Court has "stressed that the qualified immunity question

must be resolved 'at the earliest possible stage in the litigation.'"  Bennett v. Murphy, 274 F.3d

133, 136 (3d Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

However, the individual Defendants have not shown that they could reasonably have

thought on September 12, 2012 that they could terminate Plaintiff's employment in response to

constitutionally-protected First Amendment speech in which she engaged, which, as explained

above, is all that is known at this point.  See Bennis v. Gamble, 823 F.2d 723, 733 (3d Cir. 1987)

(stating that the law was clearly established that a public employee could not be retaliated against

for exercising his rights under the First Amendment); Gallagher v. Goldsmith, 213 F. Supp. 2d

496, 498 (E.D. Pa. 2002) (employee alleged that mayor dismissed him for speaking out on a

matter of public concern, which was sufficient to survive a motion to dismiss).  Thus, they have

not established that they are entitled to the defense of qualified immunity, at least at this stage of

the proceedings.

Therefore, with respect to Count I, the motion to dismiss will be denied.

<u>Fourteenth Amendment</u>

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14. Plaintiff alleges that Defendants deprived her of her property interest in her employment without due process of law. Thus, the Fourteenth Amendment is implicated in this case. However, Defendants argue that Plaintiff has not pointed to the existence of a protected property interest.

<u>Property Interests for Due Process Purposes</u>

The Supreme Court has stated that:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

<u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972) (footnote omitted). "Whether a person has a legitimate entitlement to–and hence a property interest in–his government job is a question answered by state law." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 234 (3d Cir. 2006) (citing <u>Elmore v. Cleary</u>, 399 F.3d 279, 282 (3d Cir. 2005)).

The Court of Appeals for the Third Circuit has concluded that two types of contract rights are protected property interests for purposes of the Fourteenth Amendment:

> [T]he first type arises where the contract confers a protected status, such as those "characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

<u>Unger v. National Residents Matching Program</u>, 928 F.2d 1392, 1399 (3d Cir. 1991) (quoting <u>S & D Maintenance v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988)). In this case, Plaintiff is

invoking the second type of property interest and contending that she could be terminated only

for cause.

The Court of Appeals has held that:

> under controlling Pennsylvania law, a "public employee takes his job subject to
> the possibility of summary removal by the employing authority. He is essentially
> an employee-at-will." Scott v. Phila. Parking Auth., 402 Pa. 151, 166 A.2d 278,
> 280 (1960); see also Rank v. Twp. of Annville, 163 Pa. Cmwlth. 492, 641 A.2d
> 667, 670 (1994); Bolduc v. Bd. of Supervisors, 152 Pa. Cmwlth. 248, 618 A.2d
> 1188, 1190 (1992). Stated otherwise, a public employee in Pennsylvania generally
> serves at the pleasure of her employer and thus has no legitimate entitlement to
> continued employment.

Elmore, 399 F.3d at 282. Elmore contended that Huntington Township's personnel policy

handbook mandated that she could only be fired for "just cause" and therefore overrode the

default of at-will employment and provided her with a legitimate entitlement to continued

employment sufficient to have created a property interest in her job. The Court of Appeals did

not accept this argument:

> Elmore's argument is not convincing. A local government in Pennsylvania
> cannot provide its employees with tenure status unless there exists express
> legislative authority for doing so. See Stumpp v. Stroudsburg Mun. Auth., 540 Pa.
> 391, 658 A.2d 333, 334 (1995); Scott, 166 A.2d at 280; see also Perri v. Aytch,
> 724 F.2d 362, 364 (3d Cir. 1983); Rosenthal v. Rizzo, 555 F.2d 390, 392 (3d
> Cir.1977). Cf. Appeal of Gagliardi, 401 Pa. 141, 163 A.2d 418, 419 (1960) ("A
> municipality is a creature of the state and possesses only such powers of
> government as are expressly granted to it and as are necessary to carry the same
> into effect."). As the Pennsylvania Supreme Court has stated, "'[t]enure in public
> employment, in the sense of having a claim to employment which precludes
> dismissal on a summary basis is, where it exists, a matter of legislative grace.'"
> Stumpp, 658 A.2d at 334 (quoting Scott, 166 A.2d at 281).
>
> Absent explicit enabling legislation from the Pennsylvania General
> Assembly, a township such as Huntington cannot employ workers on anything but
> an at-will basis. Cooley v. Pa. Hous. Fin. Agency, 830 F.2d 469, 471 (3d
> Cir.1987), called into question on other grounds, Foster v. Chesapeake Ins. Co.,
> Ltd., 933 F.2d 1207, 1215 n. 12 (3rd Cir. 1991). The parties have not cited, and
> this court's independent research has not revealed, a Pennsylvania statute that
> would permit Huntington to grant employment to individuals serving as office
> managers on anything other than an at-will basis. Cf. Albrechta v. Borough of

> White Haven, 810 F. Supp. 139, 142-43 (M.D. Pa. 1992). Therefore, even if
> Huntington fully intended its Personnel Policy Handbook to confer "just cause"
> employment status on its employees—a question this court need not decide—it
> simply had no authority to do so. See Stumpp, 658 A.2d at 334. It follows that
> Elmore had no property interest in her job sufficient to implicate the Due Process
> Clause. See Cooley, 830 F.2d at 473.

Id. at 282-83 (footnotes omitted).

Plaintiff has not provided any basis to distinguish this case from Elmore. She has not

cited any explicit enabling legislation from the Pennsylvania General Assembly which would

allow a Borough such as Greenville to employ its workers on anything but an at-will basis. She

cites Delliponti v. DeAngelis, 681 A.2d 1261 (Pa. 1996), in which the Pennsylvania Supreme

Court found that an administrative assistant to the chief of police had a property right in her

employment. However, pursuant to Pennsylvania statute, a borough may not remove "any

person employed in the police force" absent just cause. 53 Pa. C.S. § 46190. Thus, in

Delliponti, there was explicit enabling legislation from the Pennsylvania General assembly

which indicated that the borough could discharge police force personnel only for just cause.

That case has no bearing here as Plaintiff was not employed in the police force. See Ballas v.

City of Reading, 2001 WL 73737, at *5 n.5 (E.D. Pa. Jan. 25, 2001). See also Satterfield v.

Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 433 (E.D. Pa. 1998) (explicitly holding that a

Borough manager is an at-will employee).

Thus, Plaintiff was an at-will employee who had no protected property interest to which

the due process clause would apply. Therefore, with respect to Count II, the motion to dismiss

will be granted.

Moreover, the same analysis applies to Plaintiff's state law claim (Count VI) under Local

Agency Law:

> plaintiff argues that, even without professional employee status, he was still

entitled to procedural due process protections under Pennsylvania's Local Agency Law, 2 Pa. C.S.A. §§ 551-555, which requires, inter alia, that employees of local agencies, including school districts, be provided with procedural due process protections before their employment is terminated. 2 Pa. C.S.A. § 553. Plaintiff's citation to the Local Agency Law does not advance his cause, however, because, as the Supreme Court of Pennsylvania has held, an employee is only entitled to due process protections under that law if the employee can "establish a legitimate expectation of continued employment through either a contract or statute." Short v. Borough of Lawrenceville, 548 Pa. 265, 696 A.2d 1158, 1158 (Pa. 1997). In light of this principle, plaintiff's Local Agency Law argument brings plaintiff back to the starting point. The only statute plaintiff can rely on to establish a "legitimate expectation of continued employment" is the Public School Code, which, as discussed, provides procedural protections-and, thus, an expectation in continued employment-only to professional employees who are certificated. Plaintiff was no longer a certificated professional employee as of January 29, 1998. Plaintiff's Local Agency Law argument thus does not provide any ground to support a procedural due process claim.

Moiles v. Marple Newton Sch. Dist., 2002 WL 1964393, at *8 (E.D. Pa. Aug. 23, 2002). As explained above, Plaintiff cannot point to a statute that would provide her with a "legitimate expectation of continued employment" and therefore she cannot state a claim under Local Agency Law. Therefore, with respect to Count VI, the motion to dismiss will also be granted.

Finally, Defendants argue that, because her employment was at-will, Plaintiff cannot state claims for breach of employment contract (Count III), wrongful termination (Count IV) or detrimental reliance. Plaintiff again cites her belief that she was not an at-will employee based on the right of appeal procedure.

The Pennsylvania Supreme Court has affirmed that:

Generally, an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." Henry v. Pittsburg & Lake Erie Railroad Company, 139 Pa. 289, 297, 21 A. 157 (1891). "Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." The employer's privilege to dismiss an employee with or without cause is not absolute however, and may be qualified by the dictates of public policy.

Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998) (quoting Geary v. U.S. Steel Corp., 319 A.2d

174, 176 (Pa. 1974)).  In <u>Shick</u>, a former employee who alleged that he was fired after he filed a

claim for workers' compensation brought suit, contending that his discharge was unlawful as a

violation of public policy.  The court held that "an at-will employee who alleges retaliatory

discharge for the filing of a workers' compensation claim has stated a cause of action for which

relief may be granted under the law of this Commonwealth."  <u>Id.</u> at 1232.

More recently, the Pennsylvania Supreme Court upheld the dismissal of a plaintiff's

claim, holding that in merely alleging that her employer violated a federal statute, the

Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, 660(c)(OSHA), she had not

articulated or identified any public policy of the Commonwealth of Pennsylvania that was

contravened.  <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 750 A.2d 283 (Pa. 2000).  In that

case the plaintiff alleged that she was fired after she complained that the presence of a chemical

solution at the workplace exposed her to toxic vapors in excess of the maximum permitted by the

Occupational Safety and Health Act (OSHA).  The court noted that the plaintiff failed to identify

any Pennsylvania statute that would have governed her health and safety, nor did she make a

complaint to a Commonwealth agency.  Rather, she argued only that her discharge violated an

OSHA regulation which prohibits firing employees in retaliation for complaining of OSHA

violations.  The court held that "a bald reference to a violation of a federal regulation, without

any more articulation of how the public policy of this Commonwealth is implicated, is

insufficient to overcome the strong presumption in favor of the at-will employment relation."  <u>Id.</u>

at 290.  <u>See also</u> <u>Donahue v. Federal Express Corp.</u>, 753 A.2d 238 (Pa. Super. 2000) (at-will

employee who contended that he was fired for reporting his employer's unscrupulous practices,

but failed to identify any relevant statutes or legal precedents, failed to state a claim for wrongful

discharge).

In Fraser v. Nationwide Mutual Insurance Co., 352 F.3d 107 (3d Cir. 2003), the Court of Appeals noted that, although the Pennsylvania Superior Court has recognized three circumstances in which public policy will trump employment at-will (requiring an employee to commit a crime and firing the employee for failing to do so, preventing the employee from complying with a statutorily imposed duty and discharging an employee when specifically prohibited from doing so by statute), the Pennsylvania Supreme Court has not adopted these three exceptions. Id. at 111 (citing Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. 1998)). Thus, the Court of Appeals refused to recognize an exception to at-will employment for an employee terminated after he allegedly filed complaints regarding the company's alleged violations of law because he was under no statutory duty to report these alleged violations. Id. at 112.

In this case, Plaintiff has not identified any portion of her contract that Defendants breached, and thus she cannot state a claim for breach of her employment agreement. Nor has she pointed to any statutory duty she had to report a violation (indeed, she has not referred to any violation committed) and thus there could be no public policy exception to at-will employment and she cannot state a claim for wrongful termination. Finally, "Pennsylvania does not recognize a cause of action for detrimental reliance in the context of an at-will employment relationship." Brachvogel v. Beverly Enters., Inc., 173 F. Supp. 2d 329, 333 (E.D. Pa. 2001) (citation omitted). Therefore, with respect to Counts III, IV and V, the motion to dismiss will be granted.

Ethics Act Claim

In Count VII, Plaintiff alleges a violation of Pennsylvania's Ethics Act. Defendants argue that such claims must be raised before an "independent commission," not in court. Plaintiff contends that the Court can exercise supplemental jurisdiction over the claim.

The Public Official and Employee Ethics Act restricts public officials from certain activities. However, as described in the Act, enforcement is to be handled by the Ethics Commission, 65 Pa. C.S. §§ 1101.1(c), 1108, and the Act contains no provision for bringing a civil action in court. Therefore, with respect to Count VII, the motion to dismiss will be granted.

For these reasons, the motion to dismiss submitted on behalf of defendants (ECF No. 2) will be granted with respect to Counts II, III, IV, V, VI and VII of the Complaint and denied with respect to Count I.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY LITTLE,                           )
      Plaintiff,                   )
                                 )
      vs.                          )      Civil Action No. 13-1268
                                 )
THE BOROUGH OF GREENVILLE, et al.,      )
      Defendants.                  )      Magistrate Judge Mitchell
                                 )

<u>ORDER</u>

AND NOW, this 26th day of December, 2013,

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants is granted

with respect to Counts II, III, IV, V, VI and VII of the Complaint and denied with respect to

Count I.

                                               s/Robert C. Mitchell
                                             ROBERT C. MITCHELL
                                             United States Magistrate Judge